GEORGE W. PERKINS, as President of the CIGAR MAKERS' INTERNATIONAL UNION OF AMERICA, Respondent, *v.* HENRY H. HEERT and FREDERICK H. EHLEN, Appellants.

1. CONSTITUTIONAL LAW—WORKINGMEN'S UNION LABEL ACT—NOT A PRIVATE OR LOCAL BILL. The act (L. 1889, ch. 385) "for the better protection of skilled labor, and for the registration of labels, marks, names, brands or devices covering the products of such labor of associations or unions of workingmen or women," is a general law and not a private or local bill, and hence does not contravene the provision of the Constitution (Art. 3, § 18) prohibiting the passage of a private or local bill granting any exclusive privilege or franchise.

2. ONLY ONE SUBJECT, EXPRESSED IN TITLE. The act does not violate the requirement of the Constitution (Art. 3, § 16) that no private or local bill shall embrace more than one subject, which shall be expressed in the title.

3. NOT CONTRARY TO PUBLIC POLICY. The act is not open to the charge of unconstitutionality on the ground that it is contrary to public policy, in that it unjustly discriminates in favor of the labor of members of associations or unions as against that of non-union workmen.

4. EXCLUSIVE PRIVILEGE UNDER GENERAL LAW. The granting of an exclusive privilege or franchise to a private association is authorized by the Constitution, if effected under a general law.

5. POLICY OF THE STATE. Where the Constitution grants or authorizes a grant through legislative action of an exclusive privilege, it must be deemed to be in accord with the policy of the state.

*Perkins* v. *Heert*, 5 App. Div. 335, affirmed.

(Submitted January 27, 1899; decided February 28, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 29, 1896, affirming a judgment of the late Superior Court of the city of New York entered upon a decision awarding the plaintiff a perpetual injunction, with damages and costs.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John A. Straley* and *Morris S. Wise* for appellants. Chapter 385 of the Laws of 1889 is unconstitutional and void

because it grants an exclusive privilege to a private association in contravention of the provisions of the Constitution (§ 18, art. 3). (*J. S. W. S. Co.* v. *Le Boutillier,* 47 Hun, 521; *H. B. Co.* v. *T. B. Co.,* 142 Ill. 494; *U. S.* v. *Steffens,* 100 U. S. 82; *C. P. Union* v. *Conhaim,* 40 Minn. 243; *Schneider* v. *Williams,* 44 N. J. Eq. 391; *Weener* v. *Brayton,* 152 Mass. 101; *State* v. *Berlinsheimer,* 62 Mo. App. 168; *C. I. Union* v. *Ury,* 79 Fed. Rep. 777; *Matter of Union Ferry Co.,* 98 N. Y. 150; *Schmalz* v. *Wooley,* 39 Atl. Rep. 539.) Chapter 385 of the Laws of 1889 is a private bill, and is unconstitutional and void because within the condemnation of section 16 of article 3 of the Constitution. (*Matter of Paul,* 94 N. Y. 497; *People ex rel.* v. *Supervisors,* 43 N. Y. 10; *Kerrigan* v. *Force,* 68 N. Y. 383; *Sweet* v. *City of Syracuse,* 129 N. Y. 316; *McGee's Appeal,* 114 Penn. St. 470; *Bell* v. *Mayor, etc.,* 105 N. Y. 139; *People* v. *O'Brien,* 38 N. Y. 193.) Chapter 385 of the Laws of 1889 is unconstitutional and void because the act is contrary to public policy in that it unjustly discriminates in favor of the labor of members of associations or unions as against that of non-union workmen. (*In re Jacobs,* 98 N. Y. 98.) Plaintiff is not entitled to equitable relief by reason of the libelous and defamatory character of the label sued on, and because of the inequitable nature of the action of plaintiff and his associates. (*McVey* v. *Brandel,* 22 Atl. Rep. 912; *Strasser* v. *Moonelis,* 108 N. Y. 611; *In re Jacobs,* 98 N. Y. 98; *Commonwealth* v. *Kneeland,* 20 Pick. 206; *Vanderlip* v. *Rose,* 23 Penn. St. 82; *Delevine* v. *Percer,* 9 Dowl. P. C. 245; *N. Y. C. Co.* v. *Copley,* 45 Fed. Rep. 212; *Schneider* v. *Williams,* 44 N. J. Eq. 391; *Weener* v. *Brayton,* 152 Mass. 101.)

*Antonio Knauth* and *Tracy C. Becker* for respondent. Irrespective of the statute the label of the Cigarmakers' International Union is entitled to protection against imitation. (*Bloete* v. *Simon,* 7 N. Y. S. R. 87; *Strasser* v. *Moonelis,* 23 J. & S. 197; *People* v. *Fisher,* 50 Hun, 552; *Carson* v. *Ury,* 39 Fed. Rep. 777; *State* v. *Bishop,* 128 Mo. 373;

*State* v. *Hagen*, 6 Ind. App. 167; *Canal Co.* v. *Clark*, 13
Wall. 311; *Manufacturing Co.* v. *Trainer*, 101 U. S. 51;
*Godillot* v. *Harris*, 81 N. Y. 263; *Newman* v. *Alvord*, 51
N. Y. 189.) Chapter 385 of the Laws of 1889 does not grant
to a private association an exclusive privilege in contravention
of the provisions of the Constitution, (§ 18, art. 3). (*Caswell*
v. *Davis*, 58 N. Y. 223; *Godillot* v. *Harris*, 81 N. Y. 263;
*I. O. T. Co.* v. *Scott*, 33 La. Ann. 946; *Derringer* v. *Plate*,
29 Cal. 292; *Manufacturing Co.* v. *Trainer*, 101 U. S. 51;
*Matter of N. Y. E. R. Co.*, 70 N. Y. 327; *McKenna* v.
*Edmunstone*, 91 N.Y. 234; *White* v. *S. & U. R. R. Co.*, 14
Barb. 559; *Smith* v. *Strong*, 2 Hill, 241; *State* v. *Bishop*, 29
L. R. A. 200.) The act of 1889 does not unjustly discriminate
in favor of the labor of members of associations or unions as
against that of non-union workmen. (*Tracy* v. *Banker*, 170
Mass. 266.) The statute of 1889 was not repealed by that of
1893. (*Bulena* v. *Newman*, 10 Misc. Rep. 460.)

HAIGHT, J. This action was brought by the plaintiff, as
president of the Cigar Makers' International Union of
America, under the provisions of chapter 385 of the Laws of
1889, for an injunction to restrain the defendants from
using an alleged imitation of the union's label, a copy of
which had been filed in the office of the secretary of state
under the provisions of that law, and also for an accounting
for profits.

The Cigar Makers' International Union of America is a
voluntary unincorporated association consisting of a large
number of persons, who are practical cigar makers residing in
the United States, with its principal office located at Buffalo.
The purpose of their organization is the promoting of the
mental, moral and physical welfare of its members by assist-
ing them to obtain labor at remunerative wages and by afford-
ing them pecuniary aid in case of sickness, and generally to
maintain a high standard of workmanship. They adopted a
label upon blue paper with an ornamental border, containing
the following:

"Sept., 1880.

"Issued by authority of the Cigar Makers' International Union of America. Union Made Cigars. This certifies that the cigars contained in this box have been made by a first-class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior ratshop, coolie, prison or filthy tenement-house workmanship. Therefore, we recommend these Cigars to all smokers throughout the world. All infringements upon this label will be punished according to law.

"G. W. PERKINS,
"*President C. M. I. U. of America.*"

On one end was a copy of the seal of the union, and on the other end a place was reserved for a local stamp. After the passage of the act in question, they caused a copy of this label to be filed in the office of the secretary of state.

The defendants are cigar manufacturers in the city of New York, and are not members of the union. They caused to be printed counterfeits of the blue label adopted by the union, and pasted it upon boxes containing the cigars manufactured by them, and then through their agents sold their cigars to the public with the intent, as has been found, to defraud the union and the purchasers and to impose upon the public.

The case was tried before the court without a jury, and a decision was rendered in favor of the plaintiff, awarding a perpetual injunction against the defendants and for damages and costs.

It is claimed on behalf of the appellants that the label had been abandoned by the union; that it contained matter libelous and defamatory, which a court of equity would not protect, and that the statute in question had been repealed. These questions were fully considered by the learned Appellate Division, and we fully concur with the views of that court, as expressed in the prevailing opinion, with reference thereto. The only questions which we deem it necessary to here consider are those raised with reference to the constitutionality of the act.

The statute is as follows : " § 1. Every union or association of workingmen or women, adopting a label, mark, name, brand or device, intended to designate the products, of the labor of members of such union or association of workingmen or women, shall in order to obtain the benefits of this act, file duplicate copies of such label, mark, name, brand or device in the office of the secretary of state, who shall, under his hand and seal, deliver to the party filing or registering the same a certified copy and a certificate of the filing thereof, for which he shall receive a fee of one dollar. § 2. Every union or association of workingmen or women adopting such label, mark, name, brand, or device, and filing the same, as specified in the first section of this act, may proceed, by suit in any of the courts of record of the state, to enjoin the manufacture, use, display or sale of counterfeits or colorable imitations of such label," etc.

It is claimed that the act in question is void for the reason. that it grants an exclusive privilege to a private association in contravention of the provisions of the Constitution. (Art. III, § 18.) That section of the Constitution, so far as material, provides as follows : " The legislature shall not pass a private or local bill in any of the following cases, * * * granting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever. * * * The legislature shall pass general laws providing for the cases enumerated in this section, and for all other cases which in its judgment may be provided for by general laws."

It will be observed that the prohibition contained in this provision of the Constitution has reference to private or local bills, and that it requires the legislature to pass general laws providing for the cases in which private and local bills are prohibited. The question, therefore, arises as to whether the act in question is a general law or a private and local bill. It is entitled " An act for the better protection of skilled labor, and for the registration of labels, marks, names, brands or devices covering the products of such labor of associations or unions of workingmen or women." There is nothing in the

title or the provisions of the act that in any manner limits its provisions to any particular locality of the state or to any designated association or union of workingmen or women. Instead, the provisions are all general, including every locality in the entire state, and embracing every association or union of workingmen or women existing or that may be thereafter organized. It is in no sense local or private, but is in every sense a general law.

Again, it is claimed that the act is within the condemnation of section 16, article three of the Constitution, which provides that " no private or local bills, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." We have already shown that the act is a general law, and not a private nor local bill. It, consequently, is not brought in conflict with this provision. Furthermore, we think but one subject is mentioned in the title, and that is the better protection of skilled labor by the registration of labels, etc., covering the products of such labor.

Finally, it is insisted that the act is unconstitutional and void, for the reason that it is contrary to public policy, in that it unjustly discriminates in favor of the labor of members of associations or unions as against that of non-union workmen. The questions arising under this contention are more serious and require deliberate consideration. While private and local bills, granting to a private corporation, association or individual any exclusive privilege, immunity or franchise whatever is prohibited, the Constitution authorizes the legislature to pass general laws under which grants may be made to corporations, associations or individuals of an exclusive privilege, immunity or franchise. An exclusive privilege or franchise is, therefore, authorized if obtained under general laws. Among the exclusive privileges and franchises which have been made the subject of grants to private corporations, and with which we are all familiar, are those made by municipal governments under the authority of general laws of the right to occupy streets or highways for the construction and operation of street rail-

roads. In all of these grants, there is, of necessity, discrimination. Some particular corporation is singled out, to which the grant is given, and which, thereafter, enjoys the exclusive privilege of operating its railroad through the streets or highways specified in the grant; but the grant being authorized, the discrimination is not unlawful. It is not contrary to public policy, for the reason that the Constitution is the foundation upon which the public policy of the state is based. It embodies the policy of our government. It authorizes that which is politic and prohibits that which is deemed impolitic. Where, therefore, the Constitution grants or authorizes a grant through legislative action of an exclusive privilege, it must be deemed to be in accord with the policy of the state. As we have seen, the label authorized was by a general and not a local act. No particular association or union has been given the exclusive privilege of adopting a label, but every association or union of every kind of workingmen or women is given the right to adopt its own label, which may indicate its own workmanship. It consequently follows that whatever discrimination there may be is authorized, and, therefore, not unjust, and that the privilege granted under the general law is in accord with public policy.

We are aware that the courts of sister states have had trouble with similar legislation in their states; that very much has been written upon the subject and that the conclusions reached by the courts in the different states have widely differed. We have not thought it profitable to enter upon an elaborate discussion of these cases. The questions here presented arise under our own Constitution and are confined within narrow limits. We have not overlooked the intimation that the passage of this act was procured for the purpose of enabling union labor organizations to boycott non-union laborers and to deprive them of the legitimate fruits of their labors. We cannot, however, assume that such was the purpose and intent of the legislature or that the association of which the plaintiff is president will resort to acts which are unlawful and criminal. The act allows the members of the

union to send the products of their labors into the markets of the country marked in such a way as to indicate the character of their workmanship.   This is legitimate and proper.   It is a right that the law accords to every manufacturer.   We must assume, therefore, that the legislature in passing the act had in view the lawful and legitimate purpose and that they did not contemplate that the provisions of the act might be used for illegitimate purposes.   These views render it unnecessary to consider the question as to whether the label was a valid trade mark at common law.

No question is raised as to the right of the plaintiff to prosecute the action as president of the association.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.